**UNITED STATES DISTRICT COURT**
District of New Jersey

CHAMBERS OF
**JOSE L. LINARES**
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**                                     Nov. 22, 2010

John Doe[1]
157B Meriline Avenue
West Paterson, NJ 07424

James H. Moody, Esq.
Peter Vincent Lagregor, Esq.
Orlovsky, Moody & Schaaff
Monmouth Park Corporate Center
187 Highway 36
West Long Branch, NJ 07764

John Doe-1
36 Goshen Street
Paterson, NJ 07503

Jonathan E. Hill, Esq.
Daly, Lamastra & Cunningham
3 Mountain View Road
P.O. Box 1622
Warren, NJ 07061

**LETTER OPINION**

    Re:    <u>**Doe v. Sizewise Rentals, LLC, et al.**</u>
            **Civil Action No. 09-3409 (JLL)**

Dear Parties:

    This matter comes before the Court by way of two motions to dismiss Plaintiff's Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The first motion was filed by Defendants Arbor Glen Center and Natalie Bryson on October 12, 2010. The second motion was filed by Defendants Sizewise Rentals, LLC, Joyce Skylar, Amy Sztejman and Cord Meyer on October 15, 2010. Both motions were returnable on November 15, 2010. The Court has considered the papers submitted in support of and in opposition to the instant motions. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Defendants' motions are granted in part and denied in part.

---

[1] By way of Order dated August 2, 2010, Magistrate Judge Claire C. Cecchi granted Plaintiffs' request to proceed anonymously in this case. <u>See</u> Docket Entry No. 65.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs commenced the instant cause of action in July 2009. Leave to amend the complaint has been granted by the Court twice. By way of Opinion and Order dated September 7, 2010, this Court granted Defendants' motion to dismiss the Second Amended Complaint and, in doing so, granted Plaintiffs leave to file a Third Amended Complaint curing the deficiencies set forth by the Court in the same opinion. In doing so, the Court noted the following: "To the extent that Plaintiffs choose to re-plead any of the claims addressed herein, Plaintiffs are hereby advised to clearly identify which claims are being brought against which defendants and to set forth specific factual allegations in support of each claim." On September 17, 2010, Plaintiffs filed a Third Amended Complaint which is now the operative complaint in this matter. In granting Plaintiffs leave to file a Third Amended Complaint, the Court did not indicate that allegations contained in the Second Amended Complaint would be incorporated into the Third Amended Complaint. Nevertheless, having reviewed the substance of the Third Amended Complaint, it is clear that Plaintiffs seek to include in the Third Amended Complaint allegations contained in the Second Amended Complaint. Given Plaintiffs' pro se status, the Court will, for purposes of the instant analysis, accept as true those factual allegations contained in both the Second and Third Amended Complaint, as summarized below.

1. **Second Amended Complaint**

Plaintiff John Doe is an "Egyptian Muslim" and Plaintiff John Doe-1 is a "Muslim from Turkey." (Second Am. Compl., ¶¶ 12, 25). John Doe was employed by Sizewise Rentals, LLC to transport medical equipment during the relevant time period. John Doe recommended his friend, John Doe-1, for a job opening at Sizewise. John Doe-1 interviewed for the position, but was originally rejected. He was eventually hired by Sizewise and began working there in November 2008. John Doe-1 was ultimately fired on the basis of his "many" driving accidents while on the job. His replacement, a black individual from the Dominican Republic, had been hired a month before John Doe-1 was fired. (Second Am. Compl., ¶ 52).

In June 2009, John Doe sent an email to Joyce Skylar, the Regional Manager of Sizewise claiming that she "committed a crime of hate by using the Regional Operation Manager, Cord Meyer, to terminate employee John Doe-1 with fabricated false evidence, without informing Meyer with her prior persecution of [John] Doe-1." (Second Am. Compl., ¶ 60). Skylar subsequently informed Sizewise's Legal Department of John Doe's claim of racial discrimination. (Id., ¶ 61). Larry Askew, an attorney from Sizewise's Legal Department flew to New Jersey to conduct an investigation into John Doe's claim. One week after his departure, John Doe was "involuntarily terminated" by Skylar.

Together, Plaintiffs allege that Sizewise employees engaged in a "conspiracy to terminate minorities with fabricated causes, to hire incompetent white supervisors with lack of experience or proven track record, and to persecute the minority workers who attempt to adhere to the thorough rules of safe repair and disinfection of the rental medical equipments." (Second Am. Compl., ¶ 76).

It is further alleged that Plaintiffs' managers "abused, harassed and discriminated against minority workers and subjected the public to the risk of unsafe and infectious equipments." (Second Am. Compl., ¶ 80).

**2.     Third Amended Complaint**

According to the Third Amended Complaint, Defendant Skylar, after initially hesitating to hire Plaintiff John Doe-1, hired him but failed to offer him the same training she offered to other employees of different races. (Third Am. Compl. at 5). Skylar "pursued harsh discriminatory demands on Plaintiffs in the form of working long and tough shifts while relieving the newly hired white employees." (Third Am. Compl. at 5). In addition, it is alleged that Skylar failed to promote Plaintiff Doe and, instead, conspired with Defendant Sztejman to advance two white males and outsiders with less seniority, training, education or motivation over Plaintiff John Doe. (Third Am. Compl. at 2). She also deceived Plaintiff John Doe by concealing this higher paying position from him while attempting to advance the white males. (Third Am. Compl. at 4, 7, 8). She then conspired with Defendant Meyer, a newly hired white manager, to harass Plaintiffs by instructing two newly hired white males to "get tough" with the two Plaintiffs. (Third Am. Compl. at 3). She also discriminated against Plaintiffs by coercing Defendant Meyer to evaluate Plaintiff John Doe despite the fact that Doe had more seniority, training and education than Meyer. (Third Am. Compl. at 6).

It is further alleged that Skylar terminated Plaintiff Doe immediately after he objected to her termination of Plaintiff John Doe-1. In particular, it is alleged that Skylar "concealed the negligence of the truck maintenance by the newly hired white manager, Defendant Meyer, and accused Plaintiff John Doe-1 with causing many accidents. Defendant Skylar also falsified evidence that Plaintiff John Doe-1 was trained, prepared, and instructed to avoid accidents, while she was aware that Plaintiff Doe (who was the principal trainer of Doe-1) never completed the training of Plaintiff Doe-1 and has never been given the opportunity to do so." (Third Am. Compl. at 3, 7). Thus, Skylar terminated Plaintiff John Doe-1 before he was properly trained. (Id. at 7). Skylar also concealed the four warnings given to Defendant Meyer that a truck door had loose hinges. (Third Am. Compl. at 8). This was the same truck door that fell during a delivery by Plaintiff John Doe-1. All employees discharged by Skylar were minority workers "who were set up to perform impossible jobs based solely on their racial toughness as foreigners or minorities." (Third Am. Compl. at 3).

With respect to Defendant Sztejman, it is alleged that she discriminated against the Plaintiffs by turning a "blind eye" and/or concealing violations by other employees but expressing "anger" when Plaintiffs reported disparate treatment based on race. (Third Am. Compl. at 9-10). Sztejman also conspired with Defendants Skylar and Askew by terminating Plaintiff John Doe with false evidence. (Id.). She also contacted Defendant Natalie Bryson and asked her to submit a complaint with Sizewise accusing Plaintiff John Doe of sexual harassment. (Id.).

With respect to Defendant Meyer, it is alleged that, he was one of the "white outsider[s]" described above who was hired by Skylar. (Third Am. Compl. at 11). On his first day on the job, he yelled at Plaintiff John Doe, threatened five other drivers with immediate discharge should they

request any changes in the workplace, and made a harsh speech using multiple expletives. (Third Am. Compl. at 10).  He also terminated Plaintiff John Doe-1 by "covering up on his own negligence of the weekly truck maintenance that resulted in the door of the truck flying on the highway" and subsequently claiming that John Doe-1 caused the accident.  (Third Am. Compl. at 11).  It is also alleged that Meyer was the cause of a subsequent accident in which John Doe-1 was involved. (Id.). Finally, Plaintiffs allege that Meyer harassed and abused another driver who was "Black" after that driver made the claim that certain repairs made by Meyer were inadequate.  (Id.).  Meyer also retaliated against Plaintiff John-Doe by asking Skylar to terminate his employment. (Third Am. Compl. at 12).  Plaintiffs also allege that Meyer harassed Plaintiff John-Doe by conducting an annual evaluation despite Meyer's lack of training, seniority and education. (Id.).

As to Defendants Arbor Glen and Natalie Bryson, the Third Amended Complaint alleges that they conspired with Skylar by filing a false complaint of sexual harassment with Sizewise against Plaintiff John Doe without properly investigating said complaint and "without adhering to the professional standards of working in health care environment." (Third Am. Compl. at 15). According to the Third Amended Complaint, Bryson's actions were "race motivated" inasmuch as "she was well aware that all drivers of Sizewise were minorities and that the particular formal name of Plaintiff John Doe was from a race other than hers." (Third Am. Compl. at 16).

The Third Amended Complaint also includes certain allegations concerning proposed Defendants Trever Frickey, Tim McCarty, Steve Aten, Chris Tanner, Scott Tweeddale, Larry Askew, Nancy Gutharie and Christine Unrein.  Included in the motion to dismiss filed by the Sizewise Defendants are arguments concerning this Court's lack of personal jurisdiction over these individuals.  There is no indication on the docket, however, that the Third Amended Complaint has been properly served on the foregoing individuals.  Therefore, at this juncture, Trever Frickey, Tim McCarty, Steve Aten, Chris Tanner, Scott Tweeddale, Larry Askew, Nancy Gutharie and Christine Unrein are not parties to this action.  Accordingly, the Court declines to consider allegations lodged against these defendants (and arguments seeking dismissal of claims asserted against them) at this time.  Moreover, the Court notes that pursuant to Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  This is not the first time that Plaintiffs have been placed on notice of their failure to properly effectuate service of process on these defendants. See Docket Entry Nos. 25 (Court notice dated December 7, 2009), 43 (Court Order dated December 21, 2009), 78 (Court Opinion dated September 7, 2010 at 2).  Once again, Plaintiffs are hereby placed on notice that service of process of the Third Amended Complaint must comply with all of the requirements of the Federal Rules of Civil Procedure, including but not limited to Rule 4. Plaintiffs are hereby advised that their failure to comply with all such requirements will result in dismissal of this action as to the foregoing defendants without further notice.

4

**STANDARD**

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.1997). Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). With this framework in mind, the Court turns now to Defendants' motions.

**DISCUSSION**

Plaintiff's Third Amended Complaint purports to state claims pursuant to 42 U.S.C. §§ 1981, 1985, and 1986 against Sizewise, several of its employees, Arbor Glen Healthcare and its employee, Natalie Bryson. Motions to dismiss the Third Amended Complaint were filed by two groups of Defendants: (1) Sizewise, Joyce Skylar, Amy Sztejman and Cord Meyer (hereinafter referred to as the "Sizewise Defendants"),[2] and (2) Arbor Glen Healthcare and Natalie Bryson. As a preliminary matter, the Court notes that while Plaintiffs have alleged additional facts in support of their claims as directed by the Court in its September 2010 Opinion, it is not entirely clear to the Court which facts correspond with which claims and which claims are asserted against which defendants. The Court will, in any event, construe the allegations set forth in the Second and Third Amended Complaints liberally and in the light most favorable to Plaintiffs, the non-moving parties.

**1.    Section 1981 Claim**

The Court construes the Third Amended Complaint as alleging claims of discriminatory discharge, disparate impact, hostile work environment, and retaliation pursuant 42 U.S.C. § 1981. To establish a right to relief under § 1981,[3] a plaintiff must show "(1) that he belongs to a racial

---

[2] The Sizewise Defendants ask, in the alternative, that the Court convert their motion to dismiss into one for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Court has considered their request but declines to do so given that discovery in this matter is still ongoing.

[3] Section 1981 provides: "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties,

5

minority; (2) 'an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in' § 1981, including the right to make and enforce contracts. The standard for establishing an 'intent to discriminate on the basis of race' is identical in the Title VI and § 1981 contexts." Pryor v. National Collegiate Athletic Ass'n, 288 F.3d 548, 569 (3d Cir. 2002) (citations omitted).

As a preliminary matter, Plaintiffs do not clearly allege the "racial minority" to which they belong. Plaintiff John Doe is an "Egyptian Muslim" and Plaintiff John Doe-1 is a "Muslim from Turkey." (Second Am. Compl., ¶¶ 12, 25). Although Plaintiffs' repeatedly emphasize that they were subjected to "racial" discrimination, their Muslim ancestry is a religious characteristic, not a racial one. As the Sizewise Defendants correctly note, section 1981 bars racial, not religious, discrimination in the making or enforcement of a contract. See, e.g., Pamintuan v. Nanticoke Memorial Hosp., 192 F.3d 378, 385 (3d Cir. 1999). Nevertheless, the Third Amended Complaint does allege that Defendant Meyer "harassed and abused another Black driver." (Third Am. Compl. at 11, ¶ D). Such statement could be construed as alleging that Plaintiffs consider themselves black. See, e.g., Shipley v. First Federal Sav. & Loan Ass'n of Delaware, 703 F. Supp. 1122, 1137 (D. Del. 1988) ("[I]t is undisputed that as blacks they are members of a racial minority."). In light of the foregoing, the Court declines, at this juncture, to dismiss Plaintiffs' section 1981 claims as against the Sizewise Defendants on the basis that Plaintiffs fail to allege that they belong to a racial minority.

To the extent Plaintiffs' section 1981 claims should be construed as asserted against Defendants Arbor Glen and/or Natalie Bryson, Plaintiffs allege no specific facts which would establish that Defendants Arbor Glen and/or Natalie Bryson intended to discriminate against them on the basis of their race. Although Plaintiffs allege that Bryson's complaint of sexual harassment was "race motivated" inasmuch as "she was well aware that all drivers of Sizewise were minorities and that the particular formal name of Plaintiff John Doe was from a race other than hers," such conclusory allegations fail to raise Plaintiffs' right to relief above the speculative level. (Third Am. Compl. at 16). See Twombly, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."). In addition, Plaintiffs fail to allege how Bryson's claim of sexual harassment interfered with a protected activity or was in any way related to either Plaintiffs termination of employment. To the contrary, statements contained in the Second Amended Complaint suggest that Plaintiff John Doe-1 was terminated on the basis of his many car accidents while on the job, and that Plaintiff John Doe was terminated after complaining to Skylar about John Doe-1's termination. (Second Am. Compl., ¶¶ 60, 61). Thus, Plaintiffs have failed to allege sufficient facts to support a § 1981 claim as against Defendants Arbor Glen or Natalie Bryson. This claim is therefore dismissed as to Defendants Arbor Glen and Natalie Bryson.

---

taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981.

### A. Discrimination

As to the Sizewise Defendants, Plaintiffs' racial discrimination claims allege that, while employed at Sizewise, they were treated differently than non-minorities and that they were terminated because of their race. (Second Am. Compl., ¶ 76).  In general, claims alleging disparate treatment require a plaintiff to show "that [he] was treated less favorably than similarly situated employees who are not in plaintiff's protected class." Doe v. C.A.R.S. Prot. Plus, 527 F.3d 358, 366 (3d Cir.2008). To establish a claim for discriminatory discharge, a "plaintiff must demonstrate that he or she (1) belongs to a protected class; (2) ... held a position for which he or she was objectively qualified; (3) ... was terminated from that position; and (4) the employer sought to, or did [,] fill the position with a similarly-qualified person." Armstrong v. Burdette Tomlin Mem'l Hosp., 438 F.3d 240, 249 (3d Cir.2006) (alteration in original) (quoting Gerety v. Atlantic City Hilton Casino Resort, 184 N.J. 391, 877 A.2d 1233, 1237 (N.J.2005)).  Here, neither Plaintiff alleges any of the Sizewise Defendants attempted to or did fill their positions with another similarly qualified person.[4] Moreover, Plaintiffs' allegations concerning their respective terminations are made solely through conclusory statements and speculation of discrimination. Without more, Plaintiffs' Third Amended Complaint fails to provide a sufficient factual basis for claims of discriminatory discharge pursuant to section 1981.  Such claim is, therefore, dismissed as to the Sizewise Defendants.

With respect to their claims of disparate treatment in their employment, Plaintiffs state that they were treated differently than similarly situated non-minorities.  For instance, the Third Amended Complaint alleges that "[a]ll employees discharged by Defendant Skylar were minority workers who were set up to perform impossible jobs based solely on their racial toughness as foreigners or minorities.  Defendant Skylar made opposite decisions to ease the workplace for white males whom she perceived as superior or trustworthy than Plaintiffs or the rest of the minority workers." (Third Am. Compl. at 3-4).  The Third Amended Complaint also alleges that Skylar: concealed higher paying jobs from Plaintiffs "for the sake of advancing an outsider white male with less seniority," and failed to offer Plaintiffs the same training and education opportunities that she offered other employees "of different races."  (Third Am. Compl. at 4).  Plaintiffs provide no further details beyond such generalized accusations.  The conclusory nature of such allegations "disentitles them to the presumption of truth." Iqbal, 129 S.Ct. at 1951.  Without more, Plaintiffs' Third Amended Complaint fails to state a claim for disparate treatment pursuant to section 1981.  Such claim is therefore dismissed as to the Sizewise Defendants.

---

[4] The Second Amended Complaint does allege that Plaintiff John Doe-1 was replaced by a black individual from the Dominican Republic.  (Second Am. Compl., ¶ 52).  Nevertheless, the Second Amended Complaint alleges that John Doe-1's replacement had been hired one month before he had been fired, and makes no mention of whether such individual was "similarly qualified." (Id.).

### B. Hostile Work Environment

To establish a cause of action based on a hostile work environment, a plaintiff must plead allegations to support "that the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive." Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 803 A.2d 611, 625 (N.J. 2002); Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996). In making this determination, a court must evaluate the totality of the situation, "includ[ing] the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). Finally, "[t]he offensiveness of the individual actions complained of is also a factor to be considered in determining whether such actions are pervasive." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000).

Plaintiffs fail to allege any specific offensive conduct by any of the Sizewise Defendants, much less <u>pervasive</u> offensive conduct. Plaintiffs do not allege any specific comments made by any of the Sizewise Defendants which were directed at Plaintiffs, nor do Plaintiffs allege any physically threatening conduct by any of the Sizewise Defendants. To the contrary, Plaintiffs allege generalized behaviors with absolutely no details of the frequency and/or duration of same. For instance, the Third Amended Complaint alleges that "Skylar has pursued and continued to pursue harassment and abusive treatment of all employees that compelled all drivers to flock out of the company or to remain and sabotage Skylar's mad house operation." (Third Am. Compl. at 6). The Third Amended Complaint also alleges that Defendant Sztejman "engaged in act[s] of harassment, backstabbing, depriving minority workers of employment by conspiring with Defendant Sylar in falsifying evidence against Plaintiffs and others for the purpose of termination, demotion and reprimand." (Third Am. Compl. at 9). Such generalized allegations do not benefit from the presumption of truthfulness and are thus insufficient to state a hostile work environment claim. See, e.g., Iqbal, 129 S.Ct. at 1954 ("Were we required to accept this allegation as true, respondent's complaint would survive petitioners' motion to dismiss. But the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.").

With respect to Defendant Cord Meyer, Plaintiffs allege that he: (a) yelled at Plaintiff John Doe "to glue a carpet in the front door of the office," (b) threatened five drivers with immediate discharge if they requested any changes in the workplace, (c) gave a "harsh speech" which included multiple expletives before the five drivers, and (d) harassed and abused "another Black driver who protested the improper repair of a bed" by Meyer. "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (citation and internal quotations omitted); see also Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir.1997) ("[I]nstead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments."). Plaintiffs do not allege that they themselves were subjected to the threat or "harsh speech" detailed above, nor do Plaintiffs allege that they were subjected to the alleged "abuse" inflicted by Meyer on

"another Black driver." (Third Am. Compl. at 11). A plaintiff "cannot meet the first element of [a] hostile work environment claim ...-causation- solely by pointing to comments that were directed at other individuals." Caver v. City of Trenton, 420 F.3d 243, 263 (3d Cir. 2005). Even if the alleged comments were directed at the Plaintiffs, such incidents, along with the incident during which Meyer "yelled" at Plaintiff John Doe to "glue a carpet," appear to be isolated and, without more, do not support a claim of hostile work environment pursuant to section 1981. See, e.g., Elmahdi v. Marriott Hotel Svcs., Inc., 339 F.3d 645, 653 (8th Cir. 2003) (" Elmahdi was called 'boy' and 'black boy' on a few occasions over a period of years. . . . While offensive, the statements do not constitute a 'steady barrage of opprobrious racial comment' sufficient to support a § 1981 hostile work [environment] claim."). This claim is therefore dismissed in its entirety as to the Sizewise Defendants.

      C.      **Retaliation**

To establish a prima facie case of retaliation under § 1981, a plaintiff must allege that "(1) he engaged in protected activity, (2) his employer took adverse employment action against him, and (3) there was a causal connection between his participation in the protected activity and the adverse employment action." Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 798 (3d Cir. 2010). Plaintiffs do not allege that Plaintiff John Doe-1 engaged in any type of protected activity. As to Plaintiff John Doe, the Second and Third Amended Complaints allege that his employment was terminated after he complained to his regional manager, Joyce Skylar, that John Doe-1's termination had been fueled by racial animus. (Second Am. Compl., ¶¶ 60, 61). According to the Second Amended Complaint, Skylar subsequently informed Sizewise's Legal Department of John Doe's claim of racial discrimination and Larry Askew, an attorney from Sizewise's Legal Department, flew to New Jersey to conduct an investigation into such claim. One week after Askew's departure, John Doe was "involuntarily terminated" by Skylar. (Id., ¶ 61). Thus, the Court construes Plaintiffs' Second and Third Amended Complaints as alleging that: (1) Plaintiff John Doe engaged in protected conduct when he complained to Sizewise manager Skylar that his friend had been racially discriminated against, and (2) Sizewise and/or Skylar took adverse employment action against him by firing him one week after the investigation into his complaint of racial discrimination had been completed. Temporal proximity alone between a protected act and an adverse employment action can suffice to demonstrate causation if it is "unusually suggestive." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279-80 (3d Cir. 2000). In light of the foregoing allegations, the Court finds that Plaintiff John Doe has sufficiently pled a claim of retaliation pursuant to section 1981 as against Defendant Skylar and Sizewise. Plaintiffs have alleged no other allegations which give rise to liability for retaliation as against Sizewise employees Szetjman and/or Meyer. Accordingly, this claim is dismissed as to Amy Sztejman and Cord Meyer. This claim may proceed solely as to Plaintiff John Doe as against Defendants Sizewise and Joyce Skylar.

      2.      **Section 1985 Claim**

Section 1985(3) prohibits conspiracies directed at "depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and

immunities under the laws." 42 U.S.C. § 1985(3). "Thus, § 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct." Farber v. City of Paterson, 440 F.3d 131, 136 (3d Cir. 2006). "Some groups, particularly those deemed to be distinguishable from others by immutable characteristics, such as African-Americans, women, and the mentally retarded, are so clearly accepted as objectively identifiable that no extended analysis is needed." Id. at 137. As previously discussed, Plaintiffs' Third Amended Complaint could be construed as alleging that Plaintiffs consider themselves black. Therefore, the Court finds that Plaintiffs have sufficiently alleged the existence of an identifiable group.

As a preliminary matter, "in the context of actions brought against private conspirators, the Supreme Court has thus far recognized only two rights protected under [this subsection]: the right to be free from involuntary servitude and the right to interstate travel," neither of which are implicated in Plaintiffs' Second or Third Amended Complaint. Brown v. Philip Morris Inc., 250 F.3d 789, 805 (3d Cir. 2001).

Moreover, Plaintiffs have failed to allege any specific facts suggestive of a conspiracy among the Defendants. For instance, under the heading "Conspiracy to Interfere with Civil Rights" Plaintiffs allege that "Defendant Meyer harassed Plaintiff John Doe about an annual evaluation which Defendant Meyer insisted to perform despite his lack of training, seniority, education, motivation, and despite his falsification of evidence to remove Plaintiff John Doe-1 from employment." (Third Am. Compl. at 12, ¶ E). Plaintiffs also allege that "Defendants Arbor Glen, Beyson [sic] and Jane Doe failed to honor the terms of the contact [sic] by conspiring with Defendant Amy Sztejman by forwarding on July 2, 2009 false complaint to Sizewise against Plaintiff John Doe without adhering to the professional standards of working in health care environment." " '[M]ere conclusory allegations of deprivations of constitutional rights,' are insufficient to state a § 1985(3) claim." D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992). Aside from being deficient as conclusory, such allegations do not suggest a meeting of the minds between Defendants Meyer, Arbor Glen, Natalie Bryson and/or Amy Sztejman,[5] nor are such allegations suggestive of the requisite common animus for a § 1985(3) conspiracy. See, e.g., Farber, 440 F.3d at 136 (noting that "§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct"; this requires "that the conspirators be motivated by class-based invidiously discriminatory animus").

In short, the Third Amended Complaint contains no factual content which allows the Court to draw the reasonable inference that any of the Sizewise Defendants, Arbor Glen and/or Natalie Bryson may be held liable for civil conspiracy under § 1985. See generally Iqbal, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). This claim

---

[5] See Startzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir. 2008) (noting that a § 1985(3) conspiracy must have a meeting of the minds among its members).

is therefore dismissed as to all Defendants.

### 3.     Section 1986 Claim

A claim pursuant to 42 U.S.C. § 1986 "is a companion to § 1985(3) and provides the claimant with a cause of action against any person who, knowing that a violation of § 1985 is about to be committed and possessing power to prevent its occurrence, fails to take action to frustrate its execution." Rogin v. Bensalem Twp., 616 F.2d 680, 696 (3d Cir. 1980). Thus, a § 1986 claim is dependent upon a § 1985 claim. Clark v. Clabaugh, 20 F.3d 1290, 1295 n. 5 (3d Cir.1994). Having found no viable § 1985 claim as to the moving Defendants, no cause of action can exist under § 1986. Such claim is, therefore, dismissed as to the Sizewise Defendants, Arbor Glen and Natalie Bryson.

## CONCLUSION

Plaintiffs have been afforded two separate opportunities to amend the complaint in order to cure the pleading deficiencies addressed by the Court. The Court has now ruled on two of Plaintiffs' complaints. Having failed to cure some of these deficiencies, despite the Court's clear directive, and based on the reasons set forth above, the Court dismisses Plaintiffs' section 1985 and 1986 claims as against the Sizewise Defendants, Arbor Glen and Natalie Bryson. As to Plaintiffs' section 1981 claim, such claim is dismissed as to the foregoing Defendants, to the extent it is based upon allegations of discriminatory discharge, disparate impact and a hostile work environment. Plaintiff John Doe-1's section 1981 claim of retaliation is also dismissed. Plaintiffs have not requested leave to amend, nor does the Court find that such amendment would be appropriate under the circumstances. Accordingly, the foregoing claims are dismissed with prejudice. See generally Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 253 (3d Cir.2007); Galati v. Commerce Bancorp, Inc., 220 Fed. Appx. 97, 102 (3d Cir.2007).

Plaintiff John Doe's section 1981 claim of retaliation may proceed as against defendants Sizewise and Joyce Skylar. Such claim is dismissed with prejudice as to the remaining Sizewise Defendants, Arbor Glen and Natalie Bryson. To be clear, this matter will proceed solely as to Plaintiff John Doe's section 1981 claim of retaliation as against Defendants Sizewise Rentals, LLC and Joyce Skylar.

An appropriate Order accompanies this Letter Opinion.

/s/ Jose L. Linares
Jose L. Linares
United States District Judge