NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE, | |
| Plaintiff, | Civil Action No. 09-3409 |
| v. | OPINION |
| SIZEWISE RENTALS, LLC, et al., | |
| Defendants. | |

**CECCHI**, District Judge.

## I. INTRODUCTION

This matter comes before the Court by Motion for Summary Judgment brought by Defendants Sizewise Rentals, LLC ("Sizewise") and Joyce Sklar ("Sklar") (collectively "Defendants") against Plaintiff John Doe ("Plaintiff" or "Doe") pursuant to Federal Rule of Civil Procedure 56. Defendants have also moved to vacate this Court's Order permitting Doe and John Doe-1 ("Doe-1") (collectively, "Plaintiffs") to proceed using pseudonyms. Plaintiff has cross-moved to reinstate Doe-1's claims of racial discrimination[1] and to strike Defendants' documents that disclosed Plaintiffs' real names. The Court has considered the submissions made in support of and in opposition to the instant motion.[2] No oral argument was heard. Fed. R. Civ.

---

[1] Pro se plaintiff John Doe attempts to argue on behalf of pro se plaintiff John Doe-1, who was previously dismissed from this action. In an Order dated November 22, 2010, this Court dismissed all claims made by Doe-1 and dismissed all claims by Doe against all defendants except a claim for retaliatory discharge under 42 U.S.C. § 1981 against Sizewise and Sklar. As discussed, supra Section IV.C, a pro se Plaintiff has no authority to represent another person.

[2] The Court considers any new arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

P. 78. Based on the reasons that follow, Defendants' Motion for Summary Judgment is granted and the Court will vacate the Order permitting Plaintiffs to proceed using pseudonyms. Plaintiff's motion to reinstate Doe-1's claims and to strike documents that reveal Plaintiffs' real names is denied.

## II. BACKGROUND AND PROCEDURAL HISTORY[3]

Sizewise is a company that delivers medical equipment to be used by overweight patients in hospitals and nursing homes. (Defendants' Statement of Undisputed Material Facts ("SOF") ¶ 1; Second Amended Complaint ("SAC") ¶ 2.) Doe is an "Egyptian Muslim" who worked at the Sizewise facility in Hackensack, New Jersey from June 16, 2008 until he was terminated in July 2009. (SOF ¶¶1, 2; SAC ¶ 12.) As an Account Associate for Sizewise, Doe inspected equipment, drove and delivered the equipment to customers, and demonstrated to the customers

---

[3] Defendants submitted a statement of undisputed material facts ("SOF") along with their motion. Plaintiff has submitted a statement of "disputed" material facts, wherein he lists factual allegations, but does not cite to any supporting documents or evidence. Plaintiff claims that "[D]efendants have deliberately skipped pages 9, 14-16, 22, 34, 26, 27, 31, 32, 40, 42 from Plaintiff's Deposition which comprise a continuation of the disputed facts between the two parties." (Pl. Opp. at 8.) However, Plaintiff did not submit these pages of the deposition for the Court's review.

Doe's burden as the non-moving party in a motion for summary judgment requires "more than just bare assertions, conclusory allegations or suspicions." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005). "The Supreme Court has unequivocally stated that the object of Rule 56(e) 'is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.'" Khrakovskiy v. Denise, Civ. A. No. 06–1033, 2009 U.S. Dist. LEXIS 96650, at *26 (D.N.J. Oct. 19, 2009) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)).

The Third Amended Complaint ("TAC") is the operative pleading in this matter, however, in an effort to liberally construe the pro se Plaintiff's allegations, the Court will review the allegations contained in Plaintiff's Second and Third Amended Complaints. (See Letter Opinion of Judge Linares, Jan. 14, 2011, ECF Docket No. 100, at 2.)

how the equipment worked. (SOF ¶ 2; SAC ¶ 12.) Amy Sztejman ("Sztejman") was a District Sales Representative at Sizewise during the relevant time period. (Hill Cert., Ex. C.)

Sklar was a Regional Manager for Sizewise at the Hackensack facility during the relevant time. (Sklar Cert. ¶ 1; SOF ¶ 4.) Sklar interviewed Doe for his position and recommended that Sizewise hire him. (Sklar Cert. ¶ 1; SOF ¶ 4.) Doe began working at Sizewise in June 2008 and on October 22, 2008, Doe signed a form acknowledging his receipt of the employee handbook and policy. (Hill Cert., Ex. J.) According to Doe, soon after he began working at Sizewise, Sklar spoke to him about assuming additional responsibilities and potentially taking on a management position. (SOF ¶¶ 10-15; see also Plaintiff's Statement of Disputed Material Facts ("Pl.'s SOF") ¶ 4) However, he told Sklar that he needed time to think about it because he had other commitments and needed more time to learn the job. (SOF ¶ 10-15.) In August 2008, Doe received a written warning as a result of an altercation he had with two other employees. (Hill Cert., Ex. C.) According to Doe, both of these other employees were terminated following his complaints about them to human resources and to Sklar. (SOF ¶ 6-7; SAC ¶ 15, 17.)

In November 2008, Doe-1, who is a "Muslim from Turkey," began working at Sizewise after Doe recommended him for a job. (SOF ¶ 17; SAC ¶ 12.) Doe was assigned the task of training Doe-1, but Doe claimed that he did not have time to sufficiently train Doe-1. (SOF ¶ 20.) Early in Doe-1's employment, Doe told Sklar that Doe-1 was not performing as well as he had expected. According to Doe, Doe-1 was "frustrated" with having to work the night shift because it "was a lot of work" and he did not want to work at night. (SOF ¶ 21.) In the first six months that Doe-1 worked at Sizewise, he was involved in four accidents while driving a Sizewise vehicle. (SOF ¶ 22; Hill Cert., Ex. F.) According to Sizewise's termination report, Doe-1 was terminated on April 29, 2009 as a result of these accidents. (SOF ¶ 20; Hill Cert., Ex.

3

F.) The decision to terminate Doe-1's employment was made at the corporate level, not by Sklar, Meyer, or Sztejman. (SOF ¶ 24; Guthrie Cert. ¶ 2.)

Cord Meyer ("Meyer") was hired as the Regional Operations Manager for Sizewise in February 2009. (Meyer Cert. ¶¶ 1-2.) In June 2009, Meyer requested that Doe complete a self-evaluation form in preparation for his performance review. When Doe failed to return the form, Meyer followed up with him on two occasions, but Doe told him that he was going to speak with Sklar before returning the form. (SOF ¶ 25; Meyer Cert. ¶ 2; Hill Cert., Ex. G.)

On approximately June 21, 2009, Doe called Sklar and accused her of terminating Doe-1 because he is Muslim and Sklar is Jewish. (SOF ¶ 27.) During that conversation, he "probably" told her that he thought Meyer was Jewish as well. (SOF ¶ 28.) Doe also threatened to bring a lawsuit if Sklar did not resign from Sizewise. (SOF ¶ 29.) After receiving the call from Doe, Sklar e-mailed her manager, Tim McCarty, and told him that Doe had called her on Friday June 19, 2009 and June 21, 2009 and alleged that he was discriminated against "because he is a Muslim." (SOF ¶ 31; Hill Cert., Ex. H.) On June 27, 2009, Doe sent an e-mail to Sklar, accusing her of using "a fabricated story" to fire Doe-1. (SOF ¶ 32; Hill Cert., Ex. I.) He stated in the e-mail that Sklar and Sztejman "are Jewish. [Doe-1] is Muslim. You have a lot to explain." (SOF ¶ 32; Hill Cert., Ex. I.)

In response to Doe's accusations of discrimination, Larry Askew, General Counsel for Sizewise, conducted an investigation of Doe's claims. (SOF ¶¶ 36-37; Askew Cert. ¶¶ 1-2.) Askew met with Doe on June 29, 2009, and Doe told Askew that Sztejman wanted to fire Doe-1 because he is Muslim. (SOF ¶ 37; Askew Cert., Ex. A.) He further told Askew that Sklar teamed up with Sztejman to fire Doe-1 because they are Jewish. (SOF ¶ 37; Askew Cert., Ex.

A.) Doe also told Askew that he hated "taking direction from someone with less experience or less education than himself." (SOF ¶ 38.)

On July 2, 2009, a Sizewise customer, Arbor Glen Nursing Home ("Arbor Glen") faxed a letter "to inform [Sizewise] of a situation that took place between a Sizewise delivery man and one of [the customer's] employees" on July 1, 2009. (SOF ¶ 41; Guthrie Cert., Ex. A.) The letter identified Doe directly and stated that he looked the customer's employee up and down and stared at her breasts. (SOF ¶ 42; Guthrie Cert., Ex. A.) The letter alleged that Doe asked the employee to "stand up and turn around so he could look at her" and the customer requested that Doe not be placed on their delivery route in the future. (SOF ¶ 42; Guthrie Cert., Ex. A.) At his deposition, Doe testified that he did not remember delivering equipment to this customer and he denies that he committed the misconduct about which the customer complained. (SOF ¶ 44.) A service ticket indicates that Doe made a delivery to the customer on July 1, 2009. (SOF ¶ 44; Hill Cert., Ex. K.) Sizewise terminated Doe's employment on July 7, 2009. (SOF ¶ 45.) Sizewise asserts the termination was a result of Doe's alleged misconduct, which was complained of by the customer. (SOF 45; Hill Cert., Ex. L.) Doe argues that Sklar's "obsession with the destruction of non-Jews" was a "motivating factor" in his termination and the termination of Doe-1. (SOF ¶ 46.)

Plaintiff filed this cause of action in July 2009, asserting various claims of employment discrimination under Title VII, 42 U.S.C. §§ 2000e-1 et seq., and 42 U.S.C. §§ 1981, 1985, and 1986 against Sizewise, Sklar, Sztejman, and Meyer. On August 2, 2010, this Court granted Plaintiffs' request to proceed anonymously in this case. (Order, Aug. 3, 2010, ECF Docket Entry No. 65.) Defendants filed a motion to dismiss the Second Amended Complaint, which was

granted by this Court on September 7, 2010. (Letter Opinion, Sept. 7, 2010, ECF Docket Entry No. 78.)

Plaintiff filed a Third Amended Complaint on September 13, 2010. On November 22, 2010, Defendants moved to dismiss the Third Amended Complaint and this Court granted that motion in part and denied it in part. The Court found that read together, the Second and Third Amended Complaints allege that Sizewise terminated Doe's employment after he complained to Sklar "that John Doe-1's termination had been fueled by racial animus." (Letter Opinion, Nov. 22, 2011, ECF Docket Entry No. 91, at 9.) Plaintiff then filed a motion for reconsideration, which was denied on January 14, 2011. This Court's letter opinion stated that the lawsuit was to "proceed solely as to Plaintiff John Doe's section 1981 claim of retaliation as against Defendants Sizewise Rentals, LLC and Joyce Sklar." (Letter Opinion, Jan. 14, 2011, ECF Docket No. 100, at 8.) Sizewise and Sklar have filed the instant motion for Summary Judgment to vacate the order permitting Plaintiffs to use a pseudonym.

### III.   LEGAL STANDARD

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Pollock v. Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986).

The moving party has the initial burden of proving the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. Once the moving party meets this burden, the non-

moving party has the burden of identifying specific facts to show that, to the contrary, there exists a genuine issue of material fact for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). A fact is "material" if a dispute about that fact "might affect the outcome of the suit under governing [substantive] law," and a "genuine" issue exists as to that fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court's role is to determine whether there is a genuine issue for trial, not to weigh the evidence and decide the truth of the matter. Id. at 249.

## IV.   DISCUSSION

Pursuant to this Court's letter opinion dated January 14, 2011, this lawsuit proceeds "solely as to Plaintiff John Doe's section 1981 claim of retaliation as against Defendants Sizewise Rentals, LLC and Joyce Sklar." (Letter Opinion, Jan. 14, 2011, at 8.) Defendants have moved for summary judgment and to vacate this Court's Order permitting Plaintiffs to proceed using pseudonyms. Plaintiff has moved to reinstate John Doe-1's claims of racial discrimination and to strike Defendants' documents submitted with their motion for summary judgment that disclosed Doe's and Doe'1's real names. The Court will first address Defendants' motion to vacate the Order permitting Plaintiffs to use pseudonyms.

### A.   Defendants' Motion to Vacate Order Permitting Plaintiffs to Use Pseudonyms

Courts allow parties to proceed anonymously in exceptional cases. See Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 371 n. 2 (3d Cir. 2008). In order to proceed with a lawsuit using a pseudonym, a plaintiff must show "both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable." Doe v. Megless, 654 F.3d 404, 408 (3d Cir. 2011) (quoting Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate, 596 F.3d 1036, 1043 (9th Cir. 2010)). The risk

that the plaintiff may suffer embarrassment or economic harm is not enough to require a pseudonym. Id. Courts have allowed pseudonyms in cases involving "abortion, birth control, transexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality." Doe v. Borough of Morrisville, 130 F.R.D. 612, 614 (E.D.Pa. 1990).

In this case, Doe testified at his deposition that he used a pseudonym when filing his complaint because he thought it was necessary if he were to proceed with a class action, not because he feared having his identity revealed.[4] (SOF ¶ 47; Hill Cert., Ex. A, at 35-36.) When asked at his deposition if he was ever "concerned about having [his] identity concealed so that no one knows that it is [him] that has filed the lawsuit," Doe stated, "No. to be honest with you, no. I don't know exactly, but the answer is no." (Hill Cert., Ex. A, at 35-36.) Although Plaintiff asserts in his opposition that he was "terminated with malicious intent" and risked severe harm, his deposition testimony and submissions do not support the use of a pseudonym. (Pl. Opp. 4.) The Court finds that Plaintiff's contentions do not rise to the level of "a fear of severe harm." Therefore, Defendants' motion to vacate the Court's Order permitting Plaintiffs to proceed anonymously, dated August 2, 2010, is granted.

### B. Defendants' Motion for Summary Judgment

#### 1. Section 1981 Retaliation Claim

Defendants argue that this Court should dismiss Doe's Section 1981 retaliation claim because he is "attempting to state a claim based on alleged religious discrimination against Muslims," when the statute "bars racial, not religious, discrimination." Abulkhar v. Liberty Mut. Ins. Co., 2009 WL 5206285 (D.N.J. 2009) (Def.'s Mem. in Supp. Mot. Dismiss 15.).

---

[4] This Court issued the Order permitting Doe and Doe-1 to use pseudonyms on August 2, 2010, prior to Doe's deposition, which took place on July 6, 2011.

8

42 U.S.C. §1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42. U.S.C. § 1981.

To establish a prima facie case for retaliation under § 1981, a plaintiff must show by a preponderance of the evidence "(1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action." Hutchins v. United Parcel Service, Inc., 197 Fed.Appx. 152, 156 (3d Cir. 2006) (quoting Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001)). The employer can rebut the employee's prima facie case by asserting a legitimate, non-discriminatory reason for the employment action. Quiroga v. Hasbro, Inc., 934 F.2d 497, 501 (3d Cir. 1991). The burden then shifts back to the plaintiff to show by a preponderance of the evidence that the reasons offered by the employer are merely a pretext for discrimination. See Waddell v. Small Tube Prod. Inc., 799 F.2d 69, 73 (3d Cir. 1986).

In order to state a claim for retaliation under § 1981, the "protected activity" must relate to discrimination prohibited by § 1981, not just under any statute. See CBOCS West, Inc. v. Humphries, 553 U.S. 442, 451-52 (2008); Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir. 1998) ("[T]o be actionable under § 1981, the retaliation must have been in response to the claimant's assertion of rights that were protected by § 1981."). Section 1981 prohibits discrimination based only on race, alienage, ancestry, or ethnic characteristics. See Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987) ("Congress intended to protect from

discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics."). Section 1981 does not prohibit discrimination on the basis of religion, sex, or national origin. Vuksta v. Bethlehem Steel Corp., 540 F. Supp. 1276, 1281-82 (E.D. Pa. 1982) (holding that § 1981 does not prohibit discrimination on the basis of religion, sex, or national origin); Abdallah v. Allegheny School, No. 10-5054, 2011 WL 344079, at *5 (E.D. Pa. 2011) (dismissing Section 1981 claim because it was based on religious, not ethnic discrimination despite plaintiff's assertion that his Islamic faith was part of his ethnic characteristics and ancestry).

Here, Doe has failed to allege that he engaged in an activity protected by § 1981. Doe claims that Defendants engaged in racial discrimination and that Sklar gave preferential treatment to white employees. (Plaintiff's "Statement of Disputed Facts" ¶ 1; TAC ¶¶ E-J.) However, the undisputed facts show that Doe complained to Sizewise, asserting that he was discriminated against because he is Muslim. Furthermore, the record is devoid of any factual allegations establishing discrimination based on Plaintiff's race, ethnic characteristics or ancestry. During the June 21, 2009 phone call with Sklar, Doe accused her of "terminating John Doe-1 because he's Muslim and you are Jewish." (SOF ¶ 27.) Upon receiving the call from Doe, Sklar e-mailed her manager, Tim McCarty, and told him that Doe had called her on Friday June 19, 2009 and June 21, 2009 and alleged that he was discriminated against "because he is a Muslim." (SOF ¶ 31; Hill Cert., Ex. H.) He stated in a June 27, 2009 e-mail that Sklar and Sztejman "are Jewish. [Doe-1] is Muslim. You have a lot to explain." (SOF ¶ 32; Hill Cert., Ex. I.) Doe further told Larry Askew that Sztejman and Sklar fired Doe-1 because they are Jewish. (SOF ¶ 37; Askew Cert., Ex. A.) Doe also believed that Sklar treated Meyer more

favorably because she favored Jewish people and Plaintiff believes Mr. Meyer to be Jewish.[5] (SOF ¶ 28.) Doe also alleged that Sklar was "antagonistic" toward him because she was Jewish and he believed if she were his boss she would "stab [him] in the back." (SOF ¶ 16.) According to Doe, Sklar "had an obsession with the destruction of non-Jews" and this was a "motivating factor" in his termination and Doe-1's termination. (SOF ¶ 46.) Sklar also understood Plaintiff to claim that he was discriminated against because he is a Muslim." (SOF ¶ 31; Hill Cert., Ex. H.)

Doe has argued that "[n]owhere, in Plaintiffs' Complaints, [have] religious practices ever been asserted." (Plaintiff's Opposition Brief ¶ 3.) Furthermore, he asserts that Defendants failed to address the fact that "Plaintiffs were an Arab Egyptian and a Turkish naturalized citizen[] and all [D]efendants were Jewish Americans." (Id.) At his Deposition, when asked what his race is, Doe responded "Arabic." (Hill Cert., Ex. A, at 21.) He also stated that Stzejman and Sklar are Jewish and "were antagonistic to Arabs and Muslims." (Id.) He also discussed conflicts between "Jews and Arabs." (Id. Ex. A, at 21-22, 25.) He further asserted that a motivating factor in his termination was Sklar's alleged "obsession with the destruction of non-Jews. (Id. Ex. A, at 29.) Doe also said he believed that "Judaism is a race." (Id.)

Based on these facts, the Court does not accept Doe's argument that his complaints addressed to Sizewise were based on racial or ethnic discrimination. In his complaint to Sizewise, Doe only alleged that Sklar discriminated against him and Doe-1 because they are Muslim and she is Jewish. Therefore, his complaint was one of religious discrimination, which does not fall within the scope of protected activity under Section 1981.

---

[5] Meyer is not Jewish, however. (Meyer Cert. ¶ 3.)

11

Even assuming that Doe's complaints to Sizewise do fall under Section 1981, Doe's claims fail under further analysis. Under the second prong required for a section 1981 retaliation claim, it is undisputed that Doe was terminated from Sizewise on July 7, 2009. Under the third prong, however, Doe has failed to establish by a preponderance of the evidence, a causal connection between his complaints of discrimination and his termination from Sizewise. Doe asserts that there is a temporal connection because he was terminated approximately one week after he complained of discrimination. (Pl. Opp. 6.) However, he has not submitted any evidence that Sizewise responded negatively to his complaint. Sklar immediately contacted her supervisor following Doe's June 21, 2009 call. Following Doe's June 27, 2009 e-mail, Sizewise began investigating his complaints, sending Larry Askew to meet with Doe two days later on June 29, 2009. Furthermore, Doe testified during his deposition that Sizewise did not tell him they were terminating him because of the complaints he made. (Hill Cert., Ex. A, at 41.)

"[T]he mere fact that [an] adverse employment action occurs after [the protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two." Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997)); see also Malloy v. Intercall, Inc., No. 08-1182, 2010 WL 5441658, at *20 (D.N.J. Dec. 28, 2010) (granting defendant's motion for summary judgment where plaintiff "merely point[ed] to the fact that she complained and was terminated approximately two weeks later"). Thus, "[o]nly where the facts of the particular case are so 'unusually suggestive of retaliatory motive' may temporal proximity, on its own, support an inference of causation." Krouse, 126 F.3d at 503. If temporal proximity is not unusually suggestive, a plaintiff must use other evidence to establish a causal link. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279-81 (3d Cir. 2000).

Here, given all the surrounding circumstances, the timing of the termination is not "unusually suggestive of a retaliatory motive." Other than the fact that Doe's termination occurred about a week after Sizewise began investigating his complaint, there are no facts to suggest that the termination was related to his complaint. Therefore, the Court finds that Doe has failed to make a prima facie case of retaliation under Section 1981.

Even assuming that Doe could make a prima facie case of retaliation, Sizewise has asserted a legitimate, non-discriminatory reason for terminating Doe's employment. Sizewise claims that it terminated Doe's employment after a customer complained of Doe's misconduct during a delivery to a Sizewise customer on July 1, 2009. (Def. Br. 20.) In fact, Sizewise received a fax from its customer, Arbor Glen, complaining that a Sizewise delivery person had made inappropriate remarks to one of its female employees. (SOF ¶¶ 41-42.) While Doe testified that he did not remember making a delivery to Arbor Glen, the letter from Arbor Glen directly identifies Doe as the delivery person who was at fault. Moreover, the service ticket indicates that Doe made a delivery to Arbor Glen on July 1, 2009. (SOF ¶ 44.) Doe asserts that Sizewise fabricated the evidence regarding Arbor Glen's complaint, however, he offers no proof to support this argument. (Def. Br. 20; Hill Cert., Ex. A, at 39; Pl.'s SOF ¶ 10.) The Court finds that this speculation is not enough to establish a pretext for discrimination. See Connolly v. Mitsui O.S.K. Lines, No. 04-5127, 2009 WL 3055378, at *4 (D.N.J. 2009) (granting defendant's motion for summary judgment because plaintiff's "speculation . . . [was] not sufficient to demonstrate pretext"). Defendants are, therefore, entitled to summary judgment on Plaintiff John Doe's claim for Section 1981 retaliation.

13

### 2. Sklar's Individual Liability

Plaintiff has asserted that Sklar is individually liable for retaliation under Section 1981. The Third Circuit has found that individuals who are personally involved in the discrimination against a plaintiff may be held liable under Section 1981. Al-Khazraji v. Saint Francis College, 784 F.2d 505, 518 (3d Cir. 1986); see also Santiago v. City of Vineland, 107 F. Supp. 2d 512, 541-42 (D.N.J. 2000) (holding individual defendants liable under Section 1981 because they were involved in the plaintiff's discharge). Defendants assert, as does Sklar in her certification, that she did not make the decision to terminate Doe's employment. (Def. Br. 22; Sklar Cert. ¶ 2.) Sizewise claims that Tim McCarty, Sizewise's national Sales manager made the decision to terminate Doe upon receiving the complaint from Arbor Glen. (Def. Br. 22; Guthrie Cert. ¶ 5.)

Plaintiff claims that Sklar "engaged in interviewing candidates for employment," acted as supervisor, recommended termination, and allegedly "terminated all minority workers from employments [sic] prior to hiring Plaintiff John Doe." (Pl. Opp. 6.) While Sklar did interview candidates and recommend hiring, (See SOF ¶ 4), Plaintiff has not pointed to any evidence on the record in support of the claim that Sklar made the decision to terminate Doe. Therefore, the Court grants Defendants' motion for summary judgment on Plaintiff's claims against Sklar.

### C. Plaintiff's Cross-Motion to Reinstate John Doe-1's Claim of Racial Discrimination

Plaintiff has asked this Court to reinstate Doe-1's claims against Sizewise and Sklar because "[D]efendants have obstructed discovery for twenty four (24) months, where such botched discovery concealed the fabricated evidence of terminating John Doe-1." (Pl. Opp. 9; Pl.'s SOF ¶ 11.) Plaintiff also alleges that Meyer had a "part in causing the alleged accidents attributed to John Doe-1" and that Sklar conspired in "terminating minority workers with

falsified evidence." (Pl. Opp. 9; see also Pl.'s SOF ¶ 5) In their Reply, Defendants argue that they have provided Plaintiff with all relevant documents regarding termination. (Def. Reply Br. 5.) Furthermore, in Judge Linares's Letter Opinion dated November 22, 2010, this Court considered Doe-1's claims and dismissed them with prejudice. The Court also considered and denied Plaintiff's motion for reconsideration regarding those claims, as discussed in a Letter Opinion dated January 14, 2011.

The Court also notes that to the extent that Doe is attempting to represent Doe-1 in any respect on the pending motions, he is not empowered to do so. See Huertas v. Certified Credit & Collection Bureau, No. 08-1996 2008, WL 2165181, at *1-2 (D.N.J. 2008); McShane v. United States, 366 F.2d 286, 288 (9th Cir. 1966) (stating that a pro se plaintiff "has no authority to appear as an attorney for others than himself"); Fymbo v. State Farm Fire & Cas. Co., 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring [his] own claims to federal court without counsel, but not the claims of others."). Therefore, the Court finds that there is no basis to reinstate Doe-1's claims against Defendants.

### D. Plaintiff's Cross-Motion to Strike Defendants' Documents That Disclose Plaintiffs' Real Names

Plaintiff has also requested that this Court strike documents submitted by Defendants that disclose Plaintiffs' real names. Pursuant to this Opinion, the Order permitting Plaintiffs to proceed anonymously has been vacated. Therefore, this request is moot.

### V.   CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is granted and the Court will vacate the Order permitting Plaintiffs to proceed using pseudonyms. Plaintiff's motion to reinstate Doe-1's claims and to strike documents that reveal Plaintiffs' real

15

names is denied. An appropriate Order follows.

                                                  **CLAIRE C. CECCHI, U.S.D.J.**

DATED: April 10, 2012